Mark Fuller  (012149)
Lincoln Combs  (025080)
GALLAGHER & KENNEDY, P.A.
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8054
Facsimile:    (602) 530-8500
E-Mail:       maf@gknet.com
              lincoln.combs@gknet.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| RED RIVER FARMS, a California general partnership; ROBERT MULLION, a California resident; JOE D. McCAIN, a California resident; and WAYNE SPRAWLS FAMILY TRUST,<br><br>            Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY; JANET NAPOLITANO, in her official capacity as Secretary of the United States Department of Homeland Security; UNITED STATES COAST GUARD; ADMIRAL THAD W. ALLEN, in his official capacity as Commandant of the United States Coast Guard; ROBERT N. HILDEBRAND, in his official capacity as a Case Officer with the United States Coast Guard; WAYNE HAMILTON, in his official capacity as a Case Officer with the United States Coast Guard; and MIGUEL BELLA, in his official capacity as a Case Officer with the United States Coast Guard,<br><br>            Defendants. | No.  CV 08-2078-PHX-NVW<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Years ago, the United States and the other defendants unilaterally decided that in their view, plaintiffs ought to be liable for certain costs associated with a minor incident involving an oil spill on their farm. Having made that internal decision, the defendants decided to call this claim a "debt" – as if this were some kind of collection matter – and began levying plaintiffs' subsidies and tax refunds. Never mind that there had been no adjudication of liability. Never mind that the government was on notice of a solid defense to liability. Never mind that the government let the statute of limitations expire without so much as a nod to our judicial system. Much easier to simply call the claim a "debt" and leave it at that.

However convenient it may be, the government cannot act as judge and jury and declare an unadjudicated claim a "debt." And the time for doing what the government had to do if it wanted to reduce its claim to a judgment – i.e., a true debt– has passed. Because this threshold timing issue is case-dispositive, and can be decided on undisputed facts, plaintiffs move for summary judgment. This motion is supported by the following memorandum and separately filed statement of facts ("S.F.").

## **MEMORANDUM**

**I.   THE RELEVANT CHRONOLOGY.**

Plaintiffs own and/or operate a family-owned farming operation in La Paz County known as Red River Farms ("Red River").[1] S.F. ¶ 1. On January 5, 2002, someone unknown – presumably a vandal – removed a safety plug from the fuel line to an irrigation pump, and opened the fuel valves on the tanks. *Id.* ¶ 2. As soon as Red River was notified, it immediately shut off the fuel valve, communicated with the United States Environmental Protection Agency ("EPA") and the Arizona Department of

---

[1] Plaintiffs are Red River Farms, Robert Mullion, Joe D. McCain, and Wayne Sprawls Family Trust. We will refer to them collectively as "Red River."

Environmental Quality ("ADEQ"), and began efforts to clean up the leak and remediate any damage. *Id.* ¶ 4. Approximately 564 gallons of diesel fuel had been released into the surrounding ground, and there was a risk that some fraction of that amount had leaked into the nearby Colorado River. *Id.* ¶ 3. Red River cleaned up the fuel within twenty-four hours under ADEQ supervision, and the incident caused no known environmental damage. *Id.* ¶ 7.

Despite the modest nature of the leak, a number of federal and state agencies responded and conducted operations in the area for several days, including EPA, California Fish and Game, U.S. Fish and Wildlife, the Bureau of Reclamation, and the sheriffs' departments of La Paz County, Arizona and Riverside County, California. *Id.* ¶ 8. On September 5, 2002, acting under the auspices of the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.* (the "Act"), the United States Coast Guard ("USCG") reimbursed these agencies for their claimed costs out of the Oil Spill Liability Trust Fund (the "Fund"), *see* 33 U.S.C. § 2701(11). S.F. ¶ 9. According to the government[2] the total amount of the reimbursement was $136,578.60. *Id.*

Thus began this dispute. In correspondence of February 22 and June 11, 2003, the government demanded payment from Red River. *Id.* ¶ 10. Red River denied its liability because the leak had been caused by an unknown third party – a vandal – which is a complete defense under the Act. 33 U.S.C. § 2703(a)(3) (no liability where owner or operator establishes by a preponderance of the evidence that a spill was caused by the "act or omission of a third party" with no relationship to the owner or operator); *see also Gatlin Oil Company, Inc. v. United States*, 169 F.3d 207, 210 (4th Cir. 1999) (noting that

---

[2] The Fund is overseen by the Department of Homeland Security. For ease of reference, unless the context requires otherwise, we will refer to the defendants collectively as "the government." Within this term are the United States; the Department of Homeland Security and Janet Napolitano in her official capacity as head of that Department; the USCG and Admiral Thad Allen in his official capacity as Commandant; and Wayne Hamilton and Miguel Bella in their official capacities as Case Officers with the USCG.

"Gatlin Oil was entitled to a complete defense because an unknown vandal caused [the 20,000 to 30,000 gallon] oil spill"). Red River not only explained the situation, but identified witnesses who could verify that the cause of the leak had to have been a third party. S.F. ¶ 11.[3]

The government's response reflected that it understood Red River's defense. In fact, a USCG representative left a message for Red River's counsel on October 9, 2003 stating that "[y]our claim about the third party is good enough for me, but I will go ahead and put this project up to my supervisor and get a weigh-in from our legal team." *Id.* ¶ 12. But four months later, by letter dated February 10, 2004, the USCG informed Red River – without elaboration – that it had summarily rejected any defense to liability and that the matter was being referred to the Department of Justice ("DOJ"). *Id.* ¶ 13.

Two years then passed without anything happening. *Id.* ¶ 14. No lawsuit. No letter. No telephone call. No communication of any kind. The government sat still. It was not until February 2006 that Red River heard anything further. Specifically, the USCG (not the DOJ) sent Red River a letter with a new demand for $143,793.94. *Id.* Red River again denied liability, on the same grounds as before. *Id.* ¶ 15. The USCG responded by stating that it was forwarding the matter to the Department of the Treasury for collection and administrative offset, purportedly pursuant to the Debt Collection Improvement Act of 1996 ("DCIA"). *Id.* ¶¶ 16, 19.[4]

---

[3] The cause of the fuel leak is not directly material to the case-dispositive statute of limitations issue raised in this motion, but for the record, the valve for the fuel storage tanks had been closed since at least October 2001, as the irrigation pumping facility was only used in the months of March through October each year (not in the winter). *Id.* ¶ 4. The storage tanks had been in the same location, used in the same manner, without incident, for approximately forty years before the January 2002 incident. *Id.* ¶ 5.

[4] The amount of the government's claim has steadily increased over time as it has tacked on substantial penalties and interest allegedly owed under the DCIA. This is yet another instance of the government's disregard for the law; the penalties and interest provided in the DCIA are not applicable to "debts" under the Act. *U.S. v. Hyundai Merchant Marine Co.*, 172 F.3d 1187, 1192 (9th Cir. 1999) (holding that Act provides for interest only, and that fixed interest rate in Act preempts interest and penalties in DCIA).

4

Over the next two years, Red River continued its good faith efforts to resolve the dispute, at considerable effort and expense. *Id.* ¶ 17. At various times, and by various parties, Red River Farms was directed to speak with four different representatives of USCG, two different representatives of the Treasury Department, and with two different collection agencies. *Id.* Nothing worked. To this day – *more than 7 years after the fact* – the matter has never been resolved nor has the government ever sued Red River to adjudicate its claim for response costs. *Id.* ¶18. The government has, however, confiscated tax returns, Social Security payments, and Natural Resource Conservation Service ("NRCS") payments owed to Red River – as if the government's claim had been litigated, the government had prevailed, and a judgment had been entered. *Id.* To add insult to injury, the government also issued a negative report on Plaintiff Robert Mullion to credit agencies which could identify him and Red River as "polluters," threatening its ability to obtain credit in these troubled economic times. *Id.* ¶¶ 20, 21.

Having no other recourse, Red River brought this declaratory judgment action in November 2008. In response, the government confiscated an additional $19,932 of Red River's NCRS payments. *Id.* ¶ 22.

**II.     THE STATUTE OF LIMITATIONS HAS EXPIRED.**

Red River seeks summary judgment declaring that the applicable statute of limitations has expired on any claim under the Act. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959) (noting that Declaratory Judgment Act "allow[s] prospective defendants to sue to establish their nonliability"). Where the material facts are not disputed, summary judgment is as appropriate on a claim for declaratory relief as on any other. *E.g.*, *Union Pac. R. Co. v. Woodahl*, 308 F. Supp. 1002, 1014 (D. Mont. 1970) (granting summary judgment to plaintiff on claim for declaratory relief which "present[ed] only questions of law").

### A. A Civil Action is the Only Mechanism for Establishing Liability for Removal and Response Costs Under the Act.

The Act provides for the traditional mechanism of establishing liability for an unadjudicated, disputed claim: a civil lawsuit. When the Fund pays compensation to a claimant for removal costs or damages, it becomes subrogated to all rights, claims, and causes of action that the claimant had against the responsible party. 33 U.S.C. § 2715(a). The Act then permits the Attorney General to "commence an action on behalf of the Fund to recover any compensation paid by the Fund" against an alleged responsible party or anyone else potentially liable for recovery costs or damages. *Id.* § 2715(c). The government often does just that. *See, e.g.*, *U.S. v. Hyundai Merchant Marine Co.*, 172 F.3d 1187, 1189 (9th Cir. 1999) (federal government sued private party under the Act to recover response costs); *U.S. v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1060 (N.D. Cal. 2008) (federal government sued private parties under the Act to recover damages and removal costs); *U.S. v. Mizhir*, 106 F. Supp. 2d 124, 127 (D. Mass. 2000) (federal government sued private party under the Act to recover removal costs); *cf. Int'l Marine Carriers v. Oil Spill Liability Trust Fund*, 903 F. Supp. 1097, 1100 (S.D. Tex. 1994) (private party sued government after claim for reimbursement under the Act denied).

Nothing in the Act, the federal regulations promulgated pursuant to the Act, or the case law interpreting the Act permits the government to bypass the judicial process and simply declare an unadjudicated, disputed claim to be a "debt." Put another way, the government does not get to skip our judicial system just because it's convenient. The government could have sued Red River but chose not to do so. The question, then, is whether the applicable statute of limitations has now expired, given that more than six years have elapsed since the payments were made for which the government seeks reimbursement. As explained in the next section, it plainly has.

**B.     The Act's Three-Year Statute of Limitations Expired Long Ago.**

As we explained above, the government may assert a reimbursement claim by virtue of its subrogation to any rights or claims that the underlying claimant might have against the allegedly responsible party. Such a claim, however, is governed by an explicit three-year statute of limitations:

> No action based on rights subrogated pursuant to this Act by reason of payment of a claim may be commenced under this Act more than 3 years after the date of payment of such claim.

33 U.S.C. § 2717(f)(4); *see also* 33 U.S.C. § 2717(f)(2) (three-year statute of limitations for actions to recover removal costs from responsible party runs from date last costs incurred); *Mizhir*, 106 F. Supp. 2d at 127 (discussing three-year statutes of limitations under Act).

The federal government is bound by statutes of limitation just like any other litigant. *U.S. v. Dos Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993). And here it is undisputed that the government paid the various federal and state agencies on September 5, 2002. So under § 2717(f)(4), the government had three years from that point – or until September 5, 2005 – to file a claim against Red River. The government didn't do so, and its claim, even if it had one, expired. Red River is accordingly entitled to summary judgment and the Court should enter declaratory relief to the effect that Red River is not, and cannot be, liable under the Act for any cost reimbursement. *See Luckenbach S. S. Co. v. U.S.*, 312 F.2d 545, 549-50 (2d Cir. 1963) (holding that declaratory action seeking determination of non-liability to "terminat[e] a continuing actual controversy," based "upon the bar of the limitations period" or otherwise, was proper).

Because the language of the Act is perfectly clear, we need not defend the sound policy behind it. Suffice it to say that "[s]tatutes of limitation are primarily designed to assure fairness to defendants" and to protect defendants' right to "notice to defend within

the period of limitation and the right to be free of stale claims." *Albillo-De Leon v. Gonzales*, 410 F.2d 1090, 1095 (9th Cir. 2005). *See also King v. Alaska S.S. Co.*, 431 F.2d 994, 996 (9th Cir. 1970) (holding that "the right to bar an action for lapse of time is a substantive right"). Here, the government was on notice of a real dispute over liability, and chose not to address it head-on. More than seven years after the fact, enough is enough. Red River has a substantive right, written into the Act, to be free from the cloud of this extraordinarily stale claim. And the government cannot breathe life back into their stale claim by calling it a "debt." This isn't a student loan case where a monetary obligation is self-evident from examining a written contract, Red River has never agreed and has always disputed that any monetary obligation exists.[5]

One final note. Though the Court need not reach the issue, there is an obvious constitutional dimension to what the government has tried to do here. The Fifth Amendment guarantees that private parties may not "be deprived of life, liberty, or property, without due process of law." This requires the government to provide notice and an "opportunity to be heard" in a meaningful manner before depriving private parties of property, including money. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 867 (9th Cir. 2009). Here, there was no due process of any kind – *none*. Whether by fiat or some behind-the-scenes meeting to which Red River was not privy, the government simply decided to bypass the

---

[5] By the same token, the DCIA adds nothing to the analysis, because it is merely a statutory mechanism for collection of valid, "legally enforceable" debts owed to the government. *See* 31 U.S.C. § 3711, 3716; 31 C.F.R. § 285.5(d)(3); *Johnson v. U.S. Dept. of Treasury*, 300 Fed. Appx. 860, 862 n.3 (11th Cir. 2008). The government's potential claim against Red River has never been reduced to a legally enforceable debt.

judicial system, declare its disputed claim to be a "debt," and began seizing Red River's property. The Constitution prohibits that.[6]

### III. CONCLUSION.

The government chose to forego asserting a claim against Red River for reimbursement of any sums the government paid to various state and federal agencies in 2003. The statute of limitations for such a claim having expired long ago, the Court should grant summary judgment to Red River declaring that it has no liability under the Act, and granting such other, further relief as is appropriate (including but not limited to return of all funds improperly seized).

RESPECTFULLY SUBMITTED this 15th day of June, 2009.

                    GALLAGHER & KENNEDY, P.A.

                    By   s/ Lincoln Combs
                        Mark Fuller
                        Lincoln Combs
                        2575 E. Camelback Road, Suite 1100
                        Phoenix, Arizona 85016-9225
                        Attorneys for Plaintiffs

---

[6] The constitutional defect also eliminates any argument for a deferential standard of review under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. Section 706(2)(B) of the APA grants reviewing courts the power to "hold unlawful and set aside agency action, findings, and conclusions found to be contrary to constitutional right, power, privilege, or immunity." "The intent of Congress in 5 U.S.C. § 706(2)(B) was that courts should make an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making," *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979), so courts "need not accord deference to the agency's decisions in regard to plaintiff's constitutional challenges because the courts, not agencies, are experts on constitutional issues," *Rydeen v. Quigg*, 748 F. Supp. 900, 905 (D.D.C. 1990).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of June, 2009, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

    John C. Cruden, Esq.
    Martha C. Mann, Esq.
    Michelle R. Lambert, Esq.
    Environmental Defense Section
    United States Department of Justice
    P.O. Box 23986
    Washington, DC  20026-3986
    Attorneys for Federal Defendants

    Diane J. Humetewa, Esq.
    Sue A. Klein, Esq.
    Office of the United States Attorney
    40 N. Central Avenue, Suite 1200
    Phoenix, Arizona   85004-4408
    Attorneys for Federal Defendants

   s/ Dawn Sylvester
21414-0001/2103399