1 DIANE J. HUMETEWA
United States Attorney
SUE A. KLEIN
2 Assistant United States Attorney
Two Renaissance Square
3 40 North Central, Suite 1200
Phoenix, AZ 85004-4408
4 Tel:      (602) 514-7740

5 JOHN C. CRUDEN
Acting Assistant Attorney General
6 Environment and Natural Resources Division
MICHELLE R. LAMBERT
7 MARTHA C. MANN (Fla. Bar No. 155950)
Trial Attorneys
8 U.S. Department of Justice
Environmental Defense Section
9 P.O. Box 23986
Washington, D.C. 20026-3986
10 Tel:      (202) 616-7501 Fax:      (202) 514-8865
Email:  michelle.lambert@usdoj.gov
11           martha.mann@usdoj.gov

12 ATTORNEYS FOR FEDERAL DEFENDANTS

13 **IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
14 **PHOENIX DIVISION**

15

16 RED RIVER FARMS, et al.,                    Case No. CV-08-2078-PHX-NVW

17           Plaintiffs,                       DEFENDANTS' OPPOSITION TO
                                               PLAINTIFFS' MOTION FOR SUMMARY
      vs.                                      JUDGMENT
18
19 UNITED STATES OF AMERICA, et al.,

           Defendants.
20

21 **INTRODUCTION**

22      Defendants the United States of America; the United States Department of

23 Homeland Security; Janet Napolitano, in her official capacity as Secretary of the United

24 States Department of Homeland Security; the United States Coast Guard; Admiral Thad

25 W. Allen, in his official capacity as Commandant of the United States Coast Guard; Robert

26 N. Hildebrand, in his official capacity as a Case Officer with the United States Coast

27 Guard; Wayne Hamilton, in his official capacity as a Case Officer with the United States
28

Coast Guard; and Miguel Bella, in his official capacity as a Case Officer with the United

States Coast Guard (collectively, "Defendants") hereby oppose Plaintiffs' motion for

summary judgment regarding the Oil Pollution Act's statute of limitations, filed on June

15, 2009.  Dkt. No. 40.   Plaintiffs' motion should be denied because the statute of

limitations under the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701-2762, does not apply

to administrative offsets under the Debt Collection Improvement Act of 1996 ("DCIA"),

31 U.S.C. §§ 3701-3733.

## FACTUAL CHRONOLOGY

On or about January 5, 2002, a fuel spill occurred on property owned or operated by

Plaintiffs in La Paz County, Arizona, creating an oil sheen over 25 miles long on the

Colorado River.  See Defendants' Statement of Facts, Dkt No. 49,("Defs.' Facts") ¶¶ 1, 3.

Following the fuel spill, state and federal agencies conducted and monitored cleanup

operations in the area.  Defs.' Facts ¶ 8.  Pursuant to OPA section 1012(a)(1), 33 U.S.C.

§ 2712(a)(1), the United States Coast Guard's National Pollution Fund Center ("NPFC")

paid removal costs of $136,578.60 to reimburse the agencies that responded to the fuel

spill.  Defs.' Facts ¶ 9.

In 2003, the NPFC provided Plaintiffs with notice that they may be liable for

response costs under OPA.  See Defs.' Facts ¶ 10.  Plaintiffs submitted documentation to

the NPFC claiming a third party defense to liability under section 1003(a)(3) of OPA, 33

U.S.C. § 2703(a)(3), alleging that an unknown vandal was responsible for the spill.  Defs.'

Facts ¶ 23.  The NPFC found the individual Plaintiffs to be responsible parties and billed

them for the response costs pursuant to OPA section 1002, 33 U.S.C. § 2702.  Defs.' Facts

¶¶ 10, 27.   The NPFC provided Plaintiffs with a statement of their rights, costs and

collection alternatives along with the bill.  Defs.' Facts ¶ 36.  Plaintiffs did not pay the

outstanding debt.  See  Defs' Facts ¶ 11 (letter denying Plaintiffs' liability).

In 2006, the NPFC again billed Plaintiffs for the response costs, again including a

statement of Plaintiffs' rights, costs, and collection alternatives.  Defs.' Facts ¶¶ 14, 36.

Plaintiffs rejected these bills, Defs.' Facts ¶15, and the NPFC referred the debts of Mr.

Mullion, Mr. McCain, and Wayne Sprawls Family Trust to the United States Department

of Treasury ("Treasury") for debt collection in a good faith effort to carry out the duty

imposed by 31 U.S.C. § 3711(a) to try to collect the outstanding debt.  Defs.' Facts ¶¶ 16,

28.  Throughout this period, Plaintiffs' attorney submitted correspondence replicating

Plaintiffs' earlier arguments to both the NPFC and Treasury, and requested a

Congressional inquiry into the matter, claiming a third-party defense.  See Defs.' Facts ¶¶

11, 15, 25, 29.  The NPFC reviewed Plaintiffs' disputes and answered every letter from the

Plaintiffs' counsel, both to the NPFC and Treasury, as well as a Congressional inquiry,

explaining no less than seven times that the third-party defense had been rejected for lack

of proof.  See Defs.' Facts ¶¶ 10, 13, 14, 16, 26, 30, 31, 32.

The NPFC subsequently determined that the partnership Red River Farms was

also a responsible party and billed Red River Farms on October 9, 2007.  Defs.' Facts ¶ 33.

Again, the NPFC provided Plaintiffs with a statement of their rights, costs and collection

alternatives along with the bill.  Defs.' Facts ¶ 36.  Plaintiffs' attorney responded in a

letter, dated October 19, 2007, disputing the bill by simply attaching previous

correspondence sent to the NPFC and Treasury that argued defenses that had already been

addressed by the NPFC.  Defs.' Facts ¶ 34.   The NPFC referred the Red River Farms to

Treasury's Debt Management Services ("DMS") for collection on April 3, 2008.  Defs.'

Facts ¶ 35.

## STATUTORY BACKGROUND

**The Oil Pollution Act ("OPA"), 33 §§ 2701-2762**

Section 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1321, as amended by OPA, provides the federal government with the mechanism to coordinate and oversee cleanup operations of oil spills.  In particular, Section 311(c)(1)(A) authorizes the federal government to "ensure effective and immediate removal of a discharge, and mitigation or prevention of a substantial threat of a discharge, of oil or a hazardous substance" into "navigable waters" or their "adjoining shorelines."  33 U.S.C. § 1321(c)(1)(A).  OPA defines "removal" as "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare."  33 U.S.C. § 2701(30).

The NPFC administers the Oil Spill Liability Trust Fund ("Fund"), which may be used for payment of a federal or state agency's removal costs when it responds to the discharge or substantial threat of discharge of oil.  33 U.S.C. §§ 2712(a)(1), 1321(s). "[E]ach responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident."  33 U.S.C. § 2702(a).  "Responsible party" means, with respect to an onshore facility other than a pipeline, "any person owning or operating the facility."  33 U.S.C. § 2701(32)(B).

OPA establishes three affirmative defenses to liability, including a third party defense.  33 U.S.C. § 2703(a).  If the responsible party does not establish a defense to

liability and fails to pay the NPFC for response costs, the NPFC may refer unpaid debts to the Department of Justice for civil enforcement or to Treasury for debt collection.  31 U.S.C. § 3711(g)(1), (4).   OPA provides a three-year statute of limitations for commencement of "actions."  See 33 U.S.C. § 2717(f)(2).

**The Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701-3733.**

Congress established a debt collection process under the Debt Collection Improvement Act of 1996 ("DCIA"), which allows federal agencies, including the NPFC, to refer debts to the Department of Treasury for collection, including administrative offset against payment the debtor is receiving from the federal government.  31 U.S.C. §§ 3711(g), 3716(a).  The primary purpose of the DCIA "is to increase the collection of nontax debts owed to the Federal Government."  Exec. Order No. 13019, Supporting Families:  Collecting Delinquent Child Support Obligations," 61 Fed. Reg. 51763 (Sept. 28, 1996).  A nontax debt owed to the United States is to be transferred to Treasury if the debt "has been delinquent for a period of 180 days."  See 31 U.S.C. § 3711(g)(1).

The DCIA defines "administrative offset" as "withholding funds payable by the United States . . . to, or held by the United States for, a person to satisfy a claim."  31 U.S.C. § 3701(a).  Prior to referring a debt to Treasury for administrative offset, the referring agency must provide the debtor with (1) written notice, (2) an opportunity to review agency records, (3) an opportunity for agency review, and (4) an opportunity to settle the claim.  31 U.S.C. § 3716(a).  The DCIA expressly states that "[n]otwithstanding any other provision of law, regulation, or administrative limitation, *no limitation* on the

1  period within which an offset may be initiated or taken pursuant to this section shall be

2  effective."[1]  31 U.S.C. § 3716(e)(1) (emphasis added).

3  <center>**STANDARD OF REVIEW**</center>

4
5  Summary judgment is appropriate if "there is no genuine issue as to any material

6  fact" and the "movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);

7  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the burden of

8  establishing both the absence of any issue of material fact and the right to judgment as a

9  matter of law.  Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).  The

10
11 evidence is to be reviewed in the light most favorable to the non-moving party, and all

12 justifiable inferences are to be drawn in its favor.  Anderson v. Liberty Lobby, Inc., 477

13 U.S. 242, 255 (1986); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

14
15 Plaintiffs here raise many "facts" that are not supported in the administrative record.

16 However, those alleged facts are irrelevant to the legal issue raised in Plaintiffs' motion,

17 which must be denied as a matter of law.

18 Plaintiffs brought this action pursuant to the Administrative Procedure Act

19 ("APA"), 5 U.S.C. §§ 701-706.  See First Amend. Compl., Dkt No. 35, at ¶¶ 13 – 14.  The

20
21 APA provides, "A person suffering legal wrong because of agency action . . . is entitled

22 to judicial review thereof."  5 U.S.C. § 702.  The APA further provides that "final agency

23 action for which there is no other adequate remedy in a court are subject to judicial

24 review."  5 U.S.C. § 704.  The APA imposes a narrow and highly deferential standard of

25
26 review limited to a determination of whether the agency acted in a manner that was

27
28
---
[1]  Prior to its amendment in 2008, the DCIA provided a ten-year statute of limitations for administrative offsets.

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[2] 5

U.S.C. § 706(2)(A); Friends of the Earth v. Hintz, 800 F.2d 822, 830-31 (9th Cir. 1986);

Partridge v. Reich, 141 F.3d 920, 923 (9th Cir. 1998).  "The court is not empowered to

substitute its judgment for that of the agency." Citizens to Preserve Overton Park v.

Volpe, 401 U.S. 402, 416 (1971).  The standard is "highly deferential, presuming the

agency action to be valid and affirming the agency action if a reasonable basis exists for its

decision." Indep. Acceptance Co. v. California, 204 F.3d 1247, 1251 (9th Cir. 2000)

(internal quotations and citation omitted).  The court must uphold the challenged action if

the agency followed the required procedures, evaluated the relevant factors, and reached a

reasoned decision which did not constitute a clear error of judgment or exceed the bounds

of its statutory authority.  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,

463 U.S. 29, 43 (1983); Morongo Band of Mission Indians v. FAA, 161 F.3d 569, 573 (9th

Cir. 1998).

**ARGUMENT**

**I.     DEBTS COLLECTED PURSUANT TO THE DCIA ARE NOT SUBJECT
        TO A STATUTE OF LIMITATIONS**

Plaintiffs' one substantive argument in its motion—that OPA's statute of

limitations, 33 U.S.C. § 2717(f), bars the NPFC's use of administrative offset—is without

merit.  The NPFC's use of administrative offset is governed by the DCIA—not OPA. See

31 U.S.C. §3716.  And the DCIA provides that "[n]otwithstanding any other provision of

law, regulation, or administrative limitation, no limitation on the period within which an

---

[2]   Plaintiffs argue that the APA's deferential standard of review should not be applied in
      this case due to a "constitutional defect." See Motion at 9 n.6.  However, Plaintiffs do
      not raise a constitutional claim in their First Amended Complaint, Dkt. No. 35, or in
      their motion for summary judgment.

offset may be initiated or taken pursuant to this section shall be effective." 31 U.S.C.

§ 3716(e)(1); see also Briggs v. United States, No. C 07-05760, 2009 WL 113387, at *1

(N.D. Cal. Jan. 16, 2009) (describing Congress' 2008 amendment to the DCIA which

removed the former 10 year statute of limitations for administrative offsets). Thus, the

administrative offset at issue here is not subject to any statute of limitations, including the

three-year statute of limitations in OPA.

The DCIA provides the NPFC with administrative offset as a tool for debt

collection. The NPFC billed Plaintiffs on June 11, 2003, September 3, 2003, February 10,

2006, and October 9, 2007. Defs.' Facts ¶¶ 10, 14, 27, 33. Pursuant to law, the NPFC

referred Plaintiffs' debts to Treasury after they had been delinquent for more than 180

days. Defs.' Facts ¶¶ 16, 28, 35. The NPFC appropriately requested that Treasury place

Plaintiffs' debts into the Treasury Offset Program ("TOP"), which administers "the offset

of Federal payments" to effectuate collection of Plaintiffs' outstanding debt. See 31

C.F.R. § 285.5.

Plaintiffs ignore that under the DCIA, a debt need not be reduced to a judgment in

order to qualify for administrative offset. Under the DCIA, a "debt" is "any amount of

funds or property that has been determined by an appropriate official of the Federal

Government to be owed to the United States by a person, organization, or entity other than

another Federal agency." 31 U.S.C. § 3701(b)(1). Here, the NPFC determined that

Plaintiffs were obligated to pay the Oil Spill Liability Trust Fund ("the Fund") for the

response to the January 5, 2002 fuel spill on Plaintiffs' property. Defs.' Facts ¶¶ 10, 14,

33; see also 33 U.S.C. § 2717(a) (describing general uses of the Fund for payment of

removal costs). Although Plaintiffs allege that the response costs "have never been

reduced to a legally enforceable debt," Motion at 8 n.5, costs owed to the NPFC by responsible parties under OPA are "debts."[3]   Given the broad definition of the types of liabilities that constitute a "claim" or a "debt" under 31 U.S.C. § 3701(b), Plaintiffs' argument that administrative offsets under the DCIA can only be made after the debt has been reduced to a judgment lacks any statutory basis under the DCIA.  See United States v. Moriarty, 8 F.3d 329, 334 (6th Cir. 1993) (finding a claim under the Federal Debt Priority Statute, 31 U.S.C. § 3713, to include unliquidated damages).  Furthermore, "[th]e phrase 'legally enforceable' . . . does not mean 'not barred by the statute of limitations.' " United States v. Sather, 131 F. Supp. 2d 1146, 1153 (D.S.D. 2001) (quoting Gerrard v. U.S. Office of Educ., 656 F. Supp. 570, 574 (N.D. Cal. 1987)).

Additionally, the NPFC followed all the required procedures for collection of debts by administrative offset.[4]  See 31 U.S.C. § 3716(a); Johnson v. U.S. Dep't of Treasury, 300 Fed. Appx. 860, 862 (11th Cir. 2008) ("Pursuant to the TOP, any federal agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset.").  The NPFC provided Plaintiffs with notice of their rights set out in the DCIA within their billing statements, including inspection of the NPFC's records and review of the determination of the debt.  Defs.' Facts ¶ 36.

---

[3]  Prior to its amendment in 2008, the DCIA's 10-year statute of limitations for debts "does not apply to debts reduced to a judgment." 31 C.F.R. § 901.3(a)(4).  This is further evidence that administrative offset does not apply only to debts reduced to judgment.
[4]  The Department of Homeland Security has adopted the Department of Treasury's regulations regarding administrative offset as provided in 31 U.S.C. § 3716(b).  See 6 C.F.R. § 11.4.

1   NPFC conducted an appropriate review of its debt determinations in this case.

2   Plaintiffs sent letters questioning the debt to NPFC on March 26, 2003, October 8, 2003,

3   April 11, 2006, October 19, 2007.  Defs.' Facts ¶¶ 11, 23, 15, 34.  The NPFC considered

4   
5   each letter and explained numerous times throughout the process that the third-party

6   defense had been rejected for lack of proof.  See Defs.' Facts ¶¶ 10, 13, 14, 16, 26, 30, 31,

7   32.

8   Plaintiffs err in arguing that OPA's statute of limitations, 33 U.S.C. § 2717(f),

9   
10  applies to the NPFC's use of administrative offset.  NPFC's referral of Plaintiffs' debt to

11  Treasury is not time-barred because the DCIA expressly provides that no statute of

12  limitations applies to administrative offsets.  See 31 U.S.C. § 3716(e)(1).  That is the end

13  of the matter, and Plaintiffs' motion for summary judgment must therefore be denied.

14  In any event, OPA's statute of limitations provides only that "[a]n *action* for

15  
16  recovery of removal costs . . . must be commenced within 3 years after completion of the

17  removal action."  33 U.S.C. § 2717(f)(2) (emphasis added).  In this context, "[a]n action

18  for recovery of removal costs" means an action in court to recover costs or damages under

19  OPA.[5]

20  
21  Black's Law Dictionary describes "action" as a "[t]erm in its usual legal sense

22  mean[ing] a lawsuit brought in a court; a formal complaint within the jurisdiction of a

23  court of law."  Black's Law Dictionary 28 (6th ed. 1990).  An administrative offset, by

24  

25  [5] OPA's statute of limitations appears in a section entitled "Litigation, jurisdiction, and
26  venue."  33 U.S.C. § 2717.  "Litigation" applies to actions brought in court.  See Black's
    Law Dictionary 934 (6th ed. 1990) (defining "litigation" as "a lawsuit"); see also United
27  States v. Nader, 542 F.3d 713, 717 (9th Cir. 2008) ("Titles are also an appropriate source
    from which to discern legislative intent.").
28

contrast, is a form of debt collection via the offsetting of payments, which is not a lawsuit or "action." See 31 C.F.R. § 285.5(b). Thus, the ordinary text of OPA's statute of limitations does not apply to administrative offsets.

This conclusion is entirely consistent with the Supreme Court's decision in <u>BP America Production Co. v. Burton</u>, 549 U.S. 84 (2006). There, the Supreme Court held that administrative payment orders issued by the Department of Interior's Minerals Management Service regarding the recovery of royalties by the Government did not fall within the six year statute of limitations in 28 U.S.C. § 2415(a). 549 U.S. at 87. While examining the statutory text of 28 U.S.C. § 2415(a), the Court found that the term "action" is "ordinarily used in connection with judicial, not administrative, proceedings." <u>Id.</u> at 91.

Although the three-year time period in OPA might preclude the remedy of a lawsuit, it does not negate Plaintiffs' debts. A statute of limitations extinguishes only a remedy, not the underlying right. <u>See</u> <u>Semtek Int'l Inc. v. Lockheed Martin Corp</u>., 531 U.S. 497, 504 (2001); <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 416-17 (1998); <u>Chase Sec. Corp. v. Donaldson</u>, 325 U.S. 304, 314 (1945) ("[S]tatutes of limitation go to matters of remedy, not to destruction of fundamental rights."). Thus, the NPFC's right to recover removal costs did not cease to exist when OPA's statute of limitations expired.

Numerous courts have found that although an expired statute of limitations precludes a lawsuit, it does not preclude an otherwise valid administrative offset. <u>See</u> <u>Doko Farms v. United States</u>, 956 F.2d 1136, 1140 (Fed. Cir. 1992) ("Courts have recognized and held that the fact that the statute of limitations bars a government suit to collect an amount due to it does not bar the government from invoking its administrative remedies to offset the indebtedness against other claims by the debtor."); <u>Grider v. Cavazos</u>, 911 F.2d 1158,

1   1164-65 (5th Cir. 1990) (an offset was proper even though the statute of limitations for

2   filing a lawsuit to recover the debt had expired); Jones v. Cavazos, 889 F.2d 1043, 1049

3   (11th Cir. 1989) (the United States had six years to file a lawsuit to collect a debt and ten

4   years to administratively collect the debt through offset);  Thomas v. Bennett, 856 F.2d

5
6   1165, 1169 (8th Cir. 1988) (stating that unlike other affirmative defenses an expired statute

7   of limitations would not preclude setoff); Gerrard v. United States Office of Educ., 656 F.

8   Supp. 570, 574 (N.D. Cal. 1987) (a debt will still be legally enforceable for purposes of

9   offset even though the statute of limitations precludes a lawsuit to recover the debt).

10
11  OPA's statute of limitations is no different.

12       And if there were any doubt about the effect of statutes of limitations on

13  administrative offsets, that doubt was completely eliminated by the express terms of the

14  DCIA.  31 U.S.C. § 3716(e).

15
                                    **CONCLUSION**
16
17        The NPFC's administrative offset process is not subject to any statute of

18  limitations.  Accordingly, Plaintiffs' motion for summary judgment must be denied.

19
    Dated:  August 3, 2009                    Respectfully submitted,
20                                             JOHN C. CRUDEN
                                               Acting Assistant Attorney General
21                                             Environment and Natural Resources Division

22                                              s/ Michelle R. Lambert
                                               MICHELLE R. LAMBERT
23                                             MARTHA C. MANN (Fla. Bar No. 155950)
                                               Trial Attorney
24                                             U.S. Department of Justice
                                               Environmental Defense Section
25                                             P.O. Box 23986
                                               Washington, D.C. 20026-3986
26                                             Tel:     (202) 616-7501
                                               Fax:     (202) 514-8865
27                                             Email:  michelle.lambert@usdoj.gov
                                               ATTORNEYS FOR FEDERAL DEFENDANTS
28

1

2

3
<u>CERTIFICATE OF SERVICE</u>

4
I hereby certify that on August 3, 2009, I electronically transmitted the foregoing
Defendants' Opposition to Plaintiffs' Motion for Summary Judgment to the Clerk's Office

5
using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the
following CM/ECF registrants:

6
C. Lincoln Combs
Mark A. Fuller

7
Gallagher & Kennedy, P.A.
2575 East Camelback Road

8
Suite 1100
Phoenix, AZ 85016

9

10
lincoln.combs@gknet.com
maf@gknet.com

11

12

13
                                           <u>s/ Michelle R. Lambert</u>

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28