Mark Fuller  (012149)
Lincoln Combs  (025080)
GALLAGHER & KENNEDY, P.A.
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016-9225
Telephone:	(602) 530-8054
Facsimile:	(602) 530-8500
E-Mail:	maf@gknet.com
	lincoln.combs@gknet.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| RED RIVER FARMS, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA,  et al.,<br><br>             Defendants. | No.  CV 08-2078-PHX-NVW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

The problem with the government's position in this case can be reduced to a simple declarative sentence:  This is not a contract case.  In other words, unlike the student loan cases on which the government relies, this is not a case where a "debt" exists by virtue of a written agreement between the parties.  What the government had, and *all* it ever had, was a *claim* – a claim that Red River was responsible for certain costs under the Oil Pollution Act, 33 U.S.C. § 2701 *et seq*.  A disputed claim can be adjudicated and reduced to a debt through our civil judicial system.  But a government employee cannot recline in his or her office, declare the claim to be a "debt" without any hearing or other semblance of due process, and simply ship the file off to collections.  This is not a matter of administrative discretion.  It is a matter of the government exceeding its legal authority, period.

The government does not even try to argue that its "process," if it can be called that, somehow complied with the Fifth Amendment. It *concedes* that it didn't. Instead, it puts all of its eggs in the basket of the Debt Collection Improvement Act, 31 U.S.C. § 3701 *et seq.* ("DCIA"). According to the government, the DCIA eliminates all applicable statutes of limitation – including the statute of limitations found in plain English in the Oil Pollution Act – and transforms any potential claim the government might have into a "debt" without the need for anything more. With respect, the argument is nonsense. The DCIA allows no such thing; it only allows referral of "legally enforceable" debts to the Treasury Department ("Treasury"). And referral requires the referring agency to certify that due process has been afforded to the alleged "debtor," the latter being a fundamental protection required by the Constitution in any event. Neither of those prerequisites was met here, and the generous three-year statute of limitation provided by Congress for a claim under the Oil Pollution Act expired long ago. This is a summary judgment case.

## I.

### WHAT THIS MOTION IS (AND IS NOT) ABOUT, AND WHY "DEFERENCE" IS A NON-ISSUE

The parties sharply disagree about almost all of the facts and circumstances of the January 5, 2002 fuel leak, and naturally the government's version of the facts is designed to portray Red River in the most unflattering light possible. Were these facts relevant Red River could respond in kind, citing the substantial evidence establishing that only a vandal could have been responsible for the fuel leak (including eyewitness testimony of multiple witnesses that the diesel fuel valve was shut off in the winter months). But this motion is not about the merits of a claim the government never brought, and any debate about those underlying facts is beside the point. The issue before the Court is one of law. Either the government can unilaterally transform a potential claim under the Oil Pollution Act into a legally enforceable debt without the inconvenience of actually reducing that claim to a debt, and without being subject to the statute of limitations that Congress specified for such claims, or it can't.

2

Equally irrelevant to this motion is the government's suggestion that whatever it did or didn't do in this case is subject to "deference." If the government had determined that Red River was liable for the fuel leak costs and then sued Red River for reimbursement of those costs (as the Oil Pollution Act and the Fifth Amendment instruct and require), the government's argument in this regard might have some traction under the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 706(2)(A); *Gatlin Oil Co. v. U.S.*, 169 F.2d 207, 210 (4th Cir. 1999). But the APA requires independent review of the government's action here, where the challenge is not to Red River's liability for the fuel leak but to the government's unlawful referral of Red River's "debt" to Treasury for collection without first litigating Red River's liability. 5 U.S.C. § 706(2)(B) & (D) (requiring courts to overturn agency decisions that are "contrary to constitutional right, power, privilege, or immunity" or that fail to "observ[e] procedure required by law"); *see also Negusie v. Holder*, ___ U.S. ___, ___, 129 S. Ct. 1159, 1172 n.3 (2009) (noting different standards of review under APA for questions of law and agency actions entitled to deference). So agency expertise is not an issue in this case. *See also Rydeen v. Quigg*, 748 F. Supp. 900, 905 (D.D.C. 1990) (holding that "courts, not agencies, are experts on constitutional issues").[1] Again, the issue presented is one of law, not one of

---

[1] By the same token, the Court's review of this matter is not limited to the "administrative record." As a practical matter, the evidence offered by Red River extrinsic to the administrative record is not essential to this motion, so the issue is academic. But in any event, none of the cases cited by the government to support its claim that Red River's evidence should be stricken address the underlying procedure used to reach an agency decision, and whether that procedure was lawful under either applicable statutes or the constitutional protection of due process. Moreover, the "administrative record" here does not contain one iota of evidence reflecting any analysis or decision-making with respect to the government's decision not to sue Red River within the statute of limitations in the Oil Pollution Act, let alone evidence that anyone considered the due process implications of the government's action. And even the government's own citations recognize that "extra-record materials" may be considered 1) to determine "whether the agency has considered all relevant factors and has explained its decision," 2) where "the agency has relied on documents not in the record," and 3) where the government has acted in bad faith. *See, e.g.*, *Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996).

administrative discretion.  Is a disputed, unadjudicated claim a "debt," and can the government unilaterally transform such a claim into a "debt" by acting as prosecutor, judge, jury, and collection agent – all without any regard for due process or the statute of limitations in the Oil Pollution Act?

Placing these distractions aside, we briefly summarize again what is not disputed. For the purpose of this motion, the parties agree:

- The government paid money to federal and state agencies in reimbursement for costs incurred responding to the fuel leak that occurred in September 2002.

- Red River denied liability for those costs under a specific provision in the Oil Pollution Act, and so informed the government.

- In a February 10, 2004 letter to Red River, the government took the position that it was going to refer Red River's liability for the fuel leak to the Department of Justice.

- Red River then heard nothing further from the government.  Meanwhile, on September 5, 2005, the statute of limitations for actions by the government to recover response costs under the Oil Pollution Act expired.  33 U.S.C. § 3717(f)(4) (three-year statute)

- In February 10, 2006, the government informed Red River that it was referring the matter to Treasury, which began collection proceedings later that year.  Among other things, the government negatively reported Red River to credit bureaus and began confiscating tens of thousands of dollars of government funds owed to Red River through Treasury's administrative offset program.

- At no time did the government take any steps to file a lawsuit to reduce its claim under the Oil Pollution Act to a legally enforceable debt.

Against this undisputed factual background, the government's conduct in this case exceeded the bounds of the law.  Because the issue presented is ultimately one of constitutional magnitude, we begin by returning to due process.  We then discuss the statutory provisions at issue, and explain why the government's reliance on those would be misplaced in any event.

## II.

## DUE PROCESS

The government offers no substantive response – *none* – to Red River's due process argument, so further argument ought to be unnecessary. It suffices to repeat what every first-year law student learns, namely that the Fifth and the Fourteenth Amendments to the U.S. Constitution prevent the government from depriving private citizens of property without meaningful notice and an opportunity to be heard. *See, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (holding that "the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner") (internal quotation marks omitted); *Frank v Mangum,* 237 U.S. 309, 347 (1915) (Holmes, C.J.) ("Whatever disagreement there may be as to the scope of the phrase 'due process of law' there can be no doubt that it embraces the fundamental conception of a fair trial, with opportunity to be heard."). And although there is a large body of case law addressing just how much process is due in a variety of settings, this case does not present that issue. Here there was no opportunity for Red River to be heard at all, and the Oil Pollution Act itself defines the process for adjudicating "all controversies" under its purview: a civil lawsuit. *See* 33 U.S.C. § 2717 (titled "Litigation, Jurisdiction, and Venue," and prescribing rules and procedures for adjudication of "all controversies arising under this Act" in federal and state courts, including actions by the National Pollution Control Fund to recover reimbursement from responsible parties); *id.* § 2715(c) (stating that "Attorney General *shall* commence an action on behalf of the Fund to recover any compensation paid by the Fund . . . . against any responsible party"). A lawsuit comports with due process. What the government did here does not.[2]

---

[2] The government notes in passing that its bills to Red River – sent *after* it had unilaterally decided to bypass the judicial system and declare its claim a "debt" – contained an insert with language regarding Red River's "rights, costs, and collection alternatives." Defs.' Stmt. of Facts (dkt. 49) ¶ 36. The government cites nothing to support the notion that this post-hoc "statement" somehow complies with due process, and with good reason – due process obviously requires notice and an opportunity to be heard *before* adjudication of a party's rights. Moreover, the insert states only that the

### III.

### THE DCIA DOES NOT, AND COULD NOT, TRANSFORM AN UNADJUDICATED, DISPUTED, TIME-BARRED CLAIM INTO A "DEBT"

Having sidestepped the due process issue, the government proceeds to argue that the DCIA somehow supersedes the Oil Pollution Act. According to the government, the procedural requirements in the Oil Pollution Act for adjudication of "all controversies," and the statute of limitations, mean nothing. *See, e.g.*, Opp. to Pls.' Mot. for Summ. J. (dkt 50) at 7 ("The NPFC's use of administrative offset is governed by the DCIA – not OPA."). All the government needs to do is call an unadjudicated, disputed claim a "debt," and presto, the Oil Pollution Act no longer applies. Or so the argument goes.

Of course, government agencies are not so free to dismiss the directions given to them by Congress. *See Cmty. Television of S. Calif v. Gottfried*, 459 U.S. 498, 513 (1983) (holding that "an agency may not ignore a relevant Act of Congress"). And the notion that Congress intended the DCIA to gut the procedural requirements of the Oil Pollution Act borders on the frivolous. *Cf. Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344, 1350-52 (11th Cir. 1998) (holding that "Congress expressly set forth procedures for implementing [the Oil Pollution Act]" which preempted procedural rules in other federal statutory schemes).

In fact, not only the Oil Pollution Act, but the DCIA itself disposes of the government's argument. The DCIA permits collection of "legally enforceable" debts, nothing more. 31 C.F.R. § 285.5(d)(3); *see also Johnson v. U.S. Dept. of Treasury*, 300 Fed. Appx. 860, 862 n.3 (11th Cir. 2008). When the government referred Red River's "debt" to Treasury for collections in 2006, the statute of limitations had already expired, meaning that by definition, the claim could never be reduced to an actual debt. Equally

---

"debtor" may request reconsideration of the government's summary adjudication and may seek to work out a repayment plan. This is hardly a substitute for due process.

important, a creditor agency cannot refer a "debt" to Treasury for offset without certifying "that all due process protections have been met." *Johnson*, 300 Fed. Appx. at 862; *see also Atwater v. Roudebush*, 452 F. Supp. 622, 627 (N.D. Ill 1976) (holding that statutory authority to collect debt did not "relieve the administrators of the duty to follow the dictates of due process"). Due process was never afforded Red River.

Statutory schemes such as the Oil Pollution Act and the DCIA should be read harmoniously and in conjunction with one another to avoid an absurd result, *In re Northwest Airlines Corp.*, 483 F.3d 160, 169 (2d Cir. 2007), and should be interpreted to avoid constitutional questions, *e.g.*, *Webster v. Reproductive Health Svcs.*, 492 U.S. 490, 561 n.4 (1989). The government, however, reads the civil litigation requirement and statute of limitations out of the Oil Pollution Act, reads the requirement that only "legally enforceable" debts are eligible for offset out of the DCIA, and argues that the DCIA somehow trumps the requirements of both the Oil Pollution Act and the Fifth Amendment.

There is zero authority for the government's position. Three of the cases on which it relies involved defaults on student loans, where a legal obligation to pay a liquidated amount was in a written agreement. *Grider v. Cavazos*, 911 F.2d 1158 (5th Cir. 1990); *Jones v. Cavazos*, 889 F. 2d. 1043 (11th Cir. 1989); *Thomas v. Bennett*, 856 F.2d 1165 (8th Cir. 1988); *Gerrard v. U.S. Office of Education*, 656 F. Supp. 570 (N.D. Cal. 1987). Here, we are dealing not with a payment term in a contract, but a statutory claim, with defenses, all governed by the Oil Pollution Act, which has its own procedural requirements and statute of limitations. *See Bouchard Transp. Co.*, 147 F.3d at 1350 (noting that "Congress has specifically set forth procedures to implement the strictures of [the Oil Pollution Act]"). *BP America Prod. Co. v. Burton*, 549 U.S. 84 (2006), was also a contract case, involving government efforts to collect compensation for underpayments of royalties due under oil and gas mineral leases. And while the Supreme Court held that

the administrative orders commanding the additional royalty payments were not subject to the six-year federal statute of limitations for contract actions, *id.* at 101, it did so because the statute in question, 28 U.S.C. § 2415, contains an *express exception* for administrative collection of government contract claims. The Oil Pollution Act contains no such provision. And finally, *Doko Farms v. U.S.*, 956 F.2d 1136 (Fed. Cir. 1992) involved post-judgment collection efforts against private parties whose liability had already been determined in "administrative proceedings (including hearings)." *Id.* at 1138. There were no hearings here.

In short, even putting aside the fundamental due process problem, the government's reliance on the DCIA holds no water. The DCIA does not supersede the Oil Pollution Act, and treating this like a student loan case misses the boat. Even assuming it could have done so consistent with due process – which it plainly could not – Congress did not purport to grant the government limitless power to declare that an unadjudicated, disputed claim under the Oil Pollution Act is a "debt." Congress gave the government a full three years within which to follow the procedures in the Oil Pollution Act, and the government sat on its hands. As a result, there is not, and never has been, a legally enforceable debt for the government to collect.

RESPECTFULLY SUBMITTED this 3rd day of September, 2009.

GALLAGHER & KENNEDY, P.A.

By   s/ Lincoln Combs
    Mark Fuller
    Lincoln Combs
    2575 E. Camelback Road, Suite 1100
    Phoenix, Arizona 85016-9225
    Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of September, 2009, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> John C. Cruden, Esq.
> Martha C. Mann, Esq.
> Michelle R. Lambert, Esq.
> Environmental Defense Section
> United States Department of Justice
> P.O. Box 23986
> Washington, DC  20026-3986
> Attorneys for Federal Defendants
>
> John J. Tuchi, Esq.
> Sue A. Klein, Esq.
> Office of the United States Attorney
> 40 N. Central Avenue, Suite 1200
> Phoenix, Arizona  85004-4408
> Attorneys for Federal Defendants

  s/ Dawn Sylvester

21414-0001/2183884